PACKER, THOMAS & COMPANY, Appellee,

v.

EYSTER, Appellant.

[Cite as *Packer, Thomas & Co. v. Eyster* (1998), 126 Ohio App.3d 109.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 96 CA 93.

Decided April 16, 1998.

110

*William Hawley,* for appellee.

*Martin Hume,* for appellant.

WAITE, Judge.

This appeal arises out of a trial court decision granting summary judgment in favor of appellee Packer, Thomas & Co. against appellant David A. Eyster in the amount of $12,157.50, with interest, for breach of a covenant in an employment contract. For the foregoing reasons, this court affirms the trial court judgment.

On January 2, 1986, appellant was hired by appellee as an accountant. On April 16, 1993, appellant and appellee entered into an employment contract that contained the following provision:

"9. *Removal of Clients.* If the Employee leaves the employment of the Firm, he or the Firm with whom he becomes associated with shall have the right to purchase those clients of the Firm with which he may have a professional relationship. Payment to the Firm for such clients shall be an amount equal to 1–1/2 times billed fees for services performed by the Firm for such clients in the twelve month period immediately preceding the effective date of termination of the Employee's employment.

"Payment for clients so taken shall be considered as payment for Goodwill. Payment for each client shall be made to the Firm in a lump sum at the time the client is taken, except that, at the option of the Firm, payment may be made in two equal annual installments with the first installment being due at the time the client is taken. Interest at 15% per annum shall be paid monthly on any unpaid balance. Amounts due for purchase of clients under this paragraph 9 shall be offset against any amounts due the Employee. If the terms of this paragraph are complied with, the Employee shall be entitled to photocopies, at his expense, of any work papers relating to purchased clients. Any client of the Firm which becomes a client of the Employee or of the Firm with whom he becomes associated with within three years of termination of the Employee's employment with the Firm shall be deemed a purchased client under the provisions of this paragraph 9."

On May 4, 1994, appellant's employment was terminated. On August 29, 1994, appellee filed a complaint in the Mahoning County Common Pleas Court, alleging that appellant breached the employment contract, as certain of appellee's clients had transferred their business to appellant's new employer. On March 20, 1995, the parties entered into an agreed judgment entry, stipulating that appellant breached the employment contract and owed appellee money damages as a result. In that agreement, both parties expressly recognized that the April 16, 1993 employment contract was valid and binding.

On October 19, 1995, appellee filed another complaint in the Mahoning County Court of Common Pleas, alleging that appellant had again breached the employment contract when Chieffo's Frozen Foods, Inc., Nick and Brenda Chieffo, and Christopher Chieffo transferred their business from appellee to appellant's new employer. Appellee further alleged that appellant actively solicited the Chieffo clients to transfer their business. In accord with the employment contract, appellee requested $12,157.50 in damages, representing one and one-half times the billed fees of $8,105 for services rendered by appellee for the Chieffos within the twelve-month period preceding appellant's termination. Appellant filed a timely answer denying the allegations but admitting that the Chieffos had transferred their accounts to his current employer's firm after March 20, 1995.

On November 14, 1995, appellee filed a motion for summary judgment, contending that no genuine issue of material fact existed to warrant further proceedings and that it was entitled to judgment as a matter of law. Appellee argued that the language of subparagraph three of paragraph 9 in the employment contract was unambiguous. This provision stated that Appellant was obligated to pay appellee an amount equal to one and one-half times the previous twelve months' fees that appellee had previously billed for that client if a former Packer Thomas client transfers client accounts to appellant or his new firm within three years of appellant's termination of employment with appellee. Appellee attached an affidavit from the president of its firm attesting to the departure of the Chieffo clients, the fees billed for the Chieffos in the last twelve months, and appellant's termination from the firm. The employment contract was also attached, as was the agreed judgment entry of March 20, 1995.

Appellee also cited case law establishing that common words in a contract should be given their ordinary meaning unless the contract itself states that a different meaning is to be used or absurdity will result from such an interpretation. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146.

On December 21, 1995, appellee, in anticipation of a response from appellant on the summary judgment motion, filed a supplemental memorandum in support of summary judgment. Appellee anticipated that appellant would argue that the

contract language was ambiguous and that paragraph 9 of the contract referred only to those clients with which appellant had personally had a business relationship. Appellee reminded the court that the parties agreed in the earlier judgment entry that the employment contract was valid and binding and that to deem only those clients appellant himself had a prior business relationship with as "purchased clients" would render the third subparagraph of paragraph 9 entirely meaningless.

On January 22, 1996, appellant filed a memorandum in opposition to appellee's summary judgment motion and filed his own summary judgment motion. Appellant argued that paragraph 9 of the employment contract was ambiguous and as such must be interpreted against its drafter, appellee, and thus in favor of appellant. Appellant further argued that paragraph 9 was an unlawful restraint of trade. As such, it should be construed to mean that only those clients with whom appellant himself had a prior business relationship should be considered "purchased clients" under paragraph 9. In support of his own summary judgment motion, appellant attached his own affidavit, which stated that he had no prior business relationship with the Chieffos during his employment with appellee and that he had no access to appellee's Chieffos accounts. Appellant also stated that he did not solicit the Chieffos' business. Nick Chieffo also provided an affidavit, affirming that he and his company did not have a prior business relationship with appellant while he was serviced by appellee's firm and that a friend recommended that he transfer his account to the firm of appellant's new employer.

On February 9, 1996, a magistrate's decision granted summary judgment in favor of appellee for $12,157.50, with interest. This amount constituted the "purchased clients" price for the Chieffo accounts as determined by paragraph 9 of the employment contract. The magistrate determined that the third subparagraph of paragraph 9 deemed the Chieffos "purchased clients" even though appellant never personally had a prior business relationship with the Chieffos or actively solicited the transfer of their accounts to his current employer. The contract language was held unambiguous, with the magistrate finding that each subparagraph in paragraph 9 constituted a separate provision applying to different situations. The magistrate found that the first subparagraph explained appellant's right to purchase clients with whom he had a prior business relationship through his employment with appellee; the second subparagraph set forth the formula for determining the purchasing of clients by appellant; and the third subparagraph explained when clients are to be deemed purchased by appellant.

The magistrate also held that since the parties had previously agreed that the employment contract was valid and binding on March 20, 1995, the doctrine of res

judicata prevented the court from relitigating the validity of the contract as requested by appellant.

On February 27, 1996, appellant filed objections to the magistrate's decision. Although the filing of the objections was not timely as provided under Civ.R. 53(E)(3)(a), the trial court considered them. On April 24, 1996, the trial court adopted the magistrate's decision, finding that no error in law or fact occurred. On May 23, 1996, appellant filed an appeal with this court.

Appellant raises the following assignments of error:

"1. The trial court erred in granting summary judgment in favor of plaintiff, Packer, Thomas and Company.

"2. The trial court erred in failing to grant summary judgment in favor of the defendant, David Eyster."

The court will consider both assignments together as they contain a common basis in law and fact. Appellant argues that the trial court erred in adopting the magistrate's decision, as the magistrate incorrectly found that the language of subparagraph one and three of paragraph 9 in the employment contract was unambiguous. Appellant argues that paragraph 9 in its entirety is ambiguous. Appellant believes that the language of subparagraphs one and three in paragraph 9 limit a "purchased client" only to those clients with whom appellant had a prior business relationship while in the employ of appellee. He argues that the magistrate's interpretation would lead to absurd and inconsistent results, since subparagraph one contains no expiration of its terms while subparagraph three explicitly expires after three years. Appellant also asserts that under the magistrate's interpretation, an employer would have no interest to protect in subparagraph three. If no business relationship previously existed between the terminated employee and the client, the employer would ordinarily have no fear that client would leave when the terminated employee leaves.

Appellant submits that not only is the language of paragraph 9 ambiguous, but it also acts in restraint of trade and makes the contract one of unlimited duration and thus invalid because subparagraph one provides no time period within which that provision expires.

In reviewing summary judgment proceedings, the appellate court reviews the evidence de novo but in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 78–79, 506 N.E.2d 212, 214–215. In order to prevail on a motion for summary judgment, the movant must show that (1) there remains no genuine issue as to any material fact, and (2) when construing the evidence most strongly in favor of the nonmoving party, (3) reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The movant has the initial burden of informing

the trial court of the basis for its motion and must identify the parts of the record which tend to prove that no genuine issue of material fact exists on the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274.

■ Once this initial burden is met, the nonmoving party has a reciprocal burden to show specific facts that demonstrate that a genuine issue for trial exists. *Id.* This court has held that Civ.R. 56(C) requires that a court grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to sufficiently show the existence of the essential elements for which that party will bear the burden of proof at trial. *Lovejoy v. Westfield Natl. Ins. Co.* (1996), 116 Ohio App.3d 470, 474, 688 N.E.2d 563, 565–566, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Nevertheless, summary judgment is a procedural device that should be used cautiously. See *Tucker v. Webb Corp.* (1983), 4 Ohio St.3d 121, 122–123, 4 OBR 367, 368–369, 447 N.E.2d 100, 101–102.

■ The focus of this case is paragraph 9 of the employment contract. If language in a contract is clear and unambiguous, "this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150. If no ambiguity exists, the terms of the contract must simply be applied without resorting to methods of construction and interpretation. See *id.* The Ohio Supreme Court has held that "[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 449, 474 N.E.2d 271, 272. Additionally, contracts must be read as a whole and interpreted so as to give effect to every provision. *Farmers' Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 337, 94 N.E. 834, 839.

■ The employment contract in this case is unambiguous in its provisions, including paragraph 9 and its subparagraphs. The first subparagraph clearly sets forth appellant's rights to purchase those clients from appellee with whom appellant personally has a prior business relationship upon leaving the firm. Subparagraph two discusses how the purchase price is calculated. Subparagraph three constructively deems "purchased clients" as those clients who leave appellee's firm and transfer their accounts to a firm in which appellant is working or associated with within three years of appellant's termination with appellee.

Appellant's interpretation that subparagraph three modifies subparagraph one goes against the rule of law that every provision in a contract must be given effect. To hold that subparagraph three applies solely to business relationships

not only renders subparagraph three superfluous, but would also add language to the subparagraph that does not currently exist in that section. The only relation that exists between subparagraph one and subparagraph three is that subparagraph one sets forth how the payment for a "purchased client" is calculated.

Applying the requirements necessary for granting a summary judgment motion, appellee met the initial burden of showing that no genuine issue exists as to any material fact by pointing to the contract, specifically paragraph 9, to show that its language was unambiguous. Appellee further provided a copy of the March 20, 1995 agreed judgment entry holding that both parties stipulated that the contract was valid and binding. An affidavit was also attached setting forth the facts relevant to the Chieffo claim and the calculation of damages for transfer of the Chieffos' accounts.

Appellant failed to meet the reciprocal burden, that is, to show specific facts that demonstrate that a genuine issue for trial exists. Appellant contends that paragraph 9 limited itself to only those clients with whom he himself had a previous professional relationship. This is incorrect, as subparagraph three clearly lacks this limiting language, and the provision must be given the same effect as all of the other provisions of the contract.

 While this court finds that the covenants in the employment contract are unambiguous, they can still be found to be unenforceable if unreasonable. In Ohio, a covenant not to compete is valid and enforceable as long as the restrictions set forth in the covenant are reasonable. *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 25–26, 71 O.O.2d 12, 14–15, 325 N.E.2d 544, 546–548. In determining the validity of a covenant not to compete or any agreement which might be in restraint of trade, each case must be decided upon its own facts. *Extine v. Williamson Midwest* (1964), 176 Ohio St. 403, 405, 27 O.O.2d 375, 376, 200 N.E.2d 297, 298–299. For a covenant not to compete to be enforceable, its restrictions must be no greater than that which is required to protect the employer, it must not impose an undue hardship on the employee, and it cannot be injurious to the public. *Raimonde,* 42 Ohio St.2d at 21, 71 O.O.2d at 12, 325 N.E.2d at 544–545.

It is well established that parties to a contract in a commercial or noncommercial setting should be free to enter into whatever type of relationship they desire. *Hilb, Rogal* and *Hamilton Agency of Dayton, Inc. v. Reynolds* (1992), 81 Ohio App.3d 330, 336, 610 N.E.2d 1102, 1106–1107, citing *Rogers v. Runfola & Assoc., Inc.* (1991), 57 Ohio St.3d 5, 565 N.E.2d 540, rehearing denied (1991), 57 Ohio St.3d 725, 568 N.E.2d 1230. Ohio law holds that a party to a contract is bound by its terms regardless of whether he or she subjectively knew the terms of the contract. *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207, 210–211. The Ohio Supreme Court has previously held that " '[a] contract does not

become ambiguous by reason of fact that in its operation it will work hardship upon one of the parties thereto.' " *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 362, 678 N.E.2d 519, 526, quoting *Ohio Crane Co. v. Hicks* (1924), 110 Ohio St. 168, 172, 143 N.E. 388, 389.

█ Applying the three prongs of *Raimonde* to this employment contract, we hold that the contract is not unreasonable. The restrictions in paragraph 9 are not so onerous as to place an unreasonable restriction upon appellant and do not extend beyond that which may be reasonably necessary to protect appellee. The covenants do not restrict appellant in any way from competing with appellee, but only require him to pay a fee if the clients transfer their accounts from appellee to appellant's new employer within three years of appellant's termination of employment with appellee. Appellant is not barred from competitively engaging appellee's clients or from practicing his occupation within a certain region or for a certain period of time. Appellee is seeking to protect itself, not by seeking an injunction to prohibit competition and client transfers, but by providing for damages should clients leave with an employee upon the employee's involuntary departure from appellee's firm. The contract provisions are not injurious to the public, as the only parties effected are the former employee and employer. Clients can readily transfer their accounts to any accounting firm that they choose.

Further, this court affirms the magistrate and trial court in finding that res judicata operates to bar this subsequent relitigation regarding the validity of the contract. On March 20, 1995, both parties stipulated in an agreed entry that the employment contract was valid and binding upon both of them. Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229.

█ Res judicata applies to that which was determined and to those questions that might properly have been litigated. *Stromberg v. Bratenahl Bd. of Edn.* (1980), 64 Ohio St.2d 98, 100, 18 O.O.3d 343, 344, 413 N.E.2d 1184, 1186. The Ohio Supreme Court has found that "[t]he doctrine of res judicata embraces the policy that a party must make good his cause of action or establish his defenses '* * * by all the proper means within his control, and if he fails in that respect, purposely or negligently, he will not afterward be permitted to deny the correctness of the determination, nor to relitigate the same matters between the same parties.' " *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees* (1982), 69 Ohio St.2d 241, 244, 23 O.O.3d 243, 245, 431 N.E.2d 672, 674, quoting *Covington & Cincinnati Bridge Co. v. Sargent* (1875), 27 Ohio St. 233, 1875 WL

161, paragraph one of the syllabus. It has been held that a judgment entered by agreement is the same as if adjudicated on the merits by means of litigation and is enforceable for res judicata purposes. *Kashnier v. Donelly* (1991), 81 Ohio App.3d 154, 156, 610 N.E.2d 519, 520–521.

In the agreed-upon judgment entry filed on March 20, 1995, both parties stipulated that the contract was valid and binding. The entry resulted from appellee's suit against appellant for breach of the contract. It was alleged in the suit that appellant had taken clients from appellee when appellee terminated his employment. Appellant settled the case by paying the fees owed under paragraph 9 of the employment contract. In the settlement, appellant specifically agreed that paragraph 9 was valid. Appellant could have challenged the alleged ambiguity of the language in paragraph 9. Instead, he agreed to its validity. Appellant now seeks to try his luck at challenging the alleged ambiguity in this later action by appellee. The doctrine of res judicata prohibits this challenge.

For all of the foregoing reasons, we find that the assignments of error advanced by appellant are without merit. Accordingly, the trial court's judgment is affirmed.

*Judgment affirmed.*

Cox and VUKOVICH, JJ., concur.