**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PLEASURECRAFT MARINE ENGINE
COMPANY,
                    *Plaintiff-Appellant,*

and

CAROLINA FIRST BANK,                      No. 00-2328
                    *Plaintiff,*

          v.

THERMO POWER CORPORATION,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-00-126-3-19)

Argued: September 24, 2001

Decided: November 16, 2001

Before WIDENER, LUTTIG, and MOTZ, Circuit Judges.

---

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Widener and Judge Motz joined.

---

## COUNSEL

**ARGUED:** Wilburn Brewer, Jr., NEXSEN, PRUET, JACOBS &
POLLARD, L.L.C., Columbia, South Carolina, for Appellant. Peter

L. Murphy, LAW OFFICES OF PETER L. MURPHY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Harold W. Jacobs, Richard S. Dukes, Jr., NEXSEN, PRUET, JACOBS & POLLARD, L.L.C., Columbia, South Carolina, for Appellant.

## OPINION

LUTTIG, Circuit Judge:

Pleasurecraft appeals a district court order granting summary judgment to Thermo on Pleasurecraft's claims that it was entitled to an adjustment in purchase price under certain provisions of an asset purchase agreement between the two companies. The district court also granted summary judgment to Thermo on its counterclaim for payment of the outstanding balance due under the agreement. We agree, in relevant part, with the district court's conclusions, and, accordingly, affirm.

### I.

Pleasurecraft Marine Engine Company (Pleasurecraft) entered into an agreement with Thermo Power Corporation (Thermo) to purchase assets that Thermo owned in connection with the production of its lines of marine engines. Upon arrival of the items shipped pursuant to the agreement, Pleasurecraft verified that each shipping basket contained the number of parts indicated on the accompanying packing slip, but did not confirm that the part number on the slip corresponded to the actual part received. Only much later did Pleasurecraft commence this task of confirmation.

Perhaps because neither party to the contract knew precisely what Thermo had in its warehouse, section 2.4(a) of the agreement provided a purchase price adjustment mechanism. J.A. 34. Errors in the quantity of any asset were to be reported to Thermo within 48 hours of delivery. By contrast, Pleasurecraft had one year from closing to report errors in "book value."

At closing, Pleasurecraft objected that it never received some items for which it had been invoiced. As a result, the parties lowered the

purchase price by almost $300,000 and amended the agreement. Subsequently, Pleasurecraft discovered that Thermo had listed incorrect part numbers on at least three packing slips. Pleasurecraft claims that this resulted in a "substantial overstatement of the book value of the inventory." Appellant's Br. at 8. Pleasurecraft also asserts that Thermo charged it for more than $200,000 in unmerchantable inventory.

Unsatisfied with Thermo's response, Pleasurecraft brought suit in South Carolina state court, seeking a declaration of the amount owed under the agreement and an injunction preventing Thermo from drawing down a letter of credit delivered by Pleasurecraft to ensure final payment to Thermo. Thermo removed to federal court and counterclaimed for the outstanding balance.

Before the district court, Pleasurecraft argued that Thermo's alleged misidentifications resulted in an error in book value of the inventory, entitling Pleasurecraft to a purchase price adjustment under section 2.4(a) of the agreement. After finding that Pleasurecraft had actually received at least one of each disputed asset, J.A. 355, the district court held that the claim related only to quantity, and was therefore barred because Pleasurecraft did not object within 48 hours of delivery (of either the goods or the actual invoice). The court also found that Pleasurecraft had adduced little or no evidence regarding merchantability but had at most put forth evidence that some of the merchandise was not marketable. The district court granted summary judgment to Thermo on all issues and Pleasurecraft appeals.

## II.

Pleasurecraft asserts that it is entitled to a purchase price adjustment under section 2.4(a) of the agreement, because Thermo's misidentification of certain parts delivered to Pleasurecraft resulted in an "erroneous inflation of the *Book Value of the inventory*," Appellant's Reply Br. at 1 (emphasis added), and hence an inflated purchase price.

Under Ohio law, which controls interpretation of this agreement, J.A. 48, the interpretation of an unambiguous contract is for the court. *See Packer, Thomas & Co.* v. *Eyster*, 709 N.E.2d 922, 926 (Ohio Ct.

App. 1998) (citing *Inland Refuse Transfer Co.* v. *Browning-Ferris Indus. of Ohio*, 474 N.E.2d 271, 272 (Ohio 1984)). We conclude that while Pleasurecraft's claim has superficial appeal, the agreement unambiguously precludes it, though for reasons somewhat more complicated than those given by the district court.

Pleasurecraft's book value claim relates to three types of assets. Because the analysis is the same for each, our discussion focuses on only one type. Pleasurecraft claims to have received a shipment that the accompanying packing slip identified as containing 646 units of part number 97876. Upon delivery, Pleasurecraft's workers verified that the shipment contained 646 units as claimed on the slip. Only later did Pleasurecraft discover that part number 97876 corresponds to an expensive heat exchanger, which Pleasurecraft maintains it could not have received. Because Pleasurecraft received at least three such units, the district court held that the dispute involves only quantity, a claim foreclosed by the 48-hour requirement of section 2.4(a)(i).

Pleasurecraft's claim, however, has a little more staying power. Pleasurecraft argues that Thermo's failure to provide adequate and accurate information with each shipment, as required by section 2.4(c) of the agreement, resulted in mismatches between items and appropriate book values. And although Pleasurecraft concedes that the book value for part number 97876 "was stated correctly," J.A. 305, it nonetheless contends that an error in book value resulted from the alleged fact that Thermo delivered something other than part number 97876 in a crate labeled with that number. On Pleasurecraft's view, the claim cannot possibly be about quantity, since Pleasurecraft asserts that it did receive 646 units of something (though it has no idea what), just not 646 of part number 97876.

Clearly such a mixup could — and almost certainly would — result in an incorrect (and, in this case, an inflated) purchase price. Just as clearly, such an error need not be characterized as relating to quantity. But Pleasurecraft asks us to conclude that an error in matching otherwise correct book values with the wrong parts constitutes an error in book value under the agreement. This we cannot do.

Section 1.1 of the agreement defines "Book Value":

"Book Value" *of each individual Asset* shall mean the lowest of either:

(a) the value *of the Asset* as reflected on the books and records of Seller; or

(b) the purchase price *of the Asset* paid by Seller, or the price of the Asset on the purchase order if lower . . . .

J.A. 28 (emphasis added). That is, book value is defined on an asset-by-asset basis. An error in book value, then, must be a misstatement of the value of *some particular asset* under consideration (*e.g.*, valuing a 10-cent screw at $100). But Pleasurecraft does not allege that Thermo misstated the value of the heat exchanger. Indeed, this is precisely the sort of error that Pleasurecraft concedes did not occur. And because Pleasurecraft admits that it has no idea what parts it received in lieu of the heat exchangers, it could not possibly produce evidence that Thermo incorrectly valued those parts.

Pleasurecraft contends, nonetheless, that the district court erred in granting summary judgment to Thermo on this claim, because Thermo did not "dispute[ ] the [alleged] misidentification." Appellant's Br. at 16. But the misidentification, assuming it occurred, cannot transmute the nature of Pleasurecraft's claim into one of error in book value. Pleasurecraft's repeated references to Thermo's alleged misidentifications are simply not material to Pleasurecraft's book value claim.

The real problem here, if any, is that Pleasurecraft suffered financial loss as a result of such misidentifications. Thermo's mistakes *may* constitute a material breach of Thermo's obligation, set forth in section 2.4(c) of the agreement, to include with each shipment an invoice stating the book value of the delivered assets. And, perhaps Pleasurecraft could have proceeded under section 9.2(b) of the agreement, which provides for indemnification in such situations. In fact, Pleasurecraft's initial state court complaint could be read to support such a claim. Unfortunately, however, whether or not Pleasurecraft intended to pursue this theory, it has abandoned it by failing to men-

tion it in its opening brief. *See Edwards* v. *City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1991) (citing Fed. R. App. P. 28(a)(9)(A)).

Pleasurecraft's claim fails for an additional reason. At closing, Pleasurecraft raised concerns regarding quantities of several items. This resulted in a purchase price reduction and an amendment to the agreement. Section 9 of the amendment states:

> The parties hereby agree that the Purchase Price has been reduced by $296,790 to reflect deductions related to *inventory*, . . . [and] undelivered baskets . . . . *[Pleasurecraft] agrees that there will be no further adjustments to the Purchase Price or claims for indemnification related to these items.*

J.A. 171 (emphasis added). While "these items" is arguably ambiguous, the parties agree on its meaning. *See* Appellant's Br. at 7 ("[The adjusted] price reflected the *book value of all parts alleged by [Thermo] to have been previously shipped to Pleasurecraft.*") (emphasis added); Appellee's Br. at 12. The amended agreement clearly forecloses Pleasurecraft's claim.

The district court may have erred in concluding that Pleasurecraft's claim involves only errors in quantity. But the district court correctly held that the claim is not for an error in book value within the meaning of the agreement, and we therefore affirm.

### III.

Pleasurecraft next argues that the district court erred in granting summary judgment to Thermo on Pleasurecraft's claim that many of the items shipped were unmerchantable. Under section 3.10 of the agreement, Pleasurecraft had the right to reject such merchandise within one year of closing. Summary judgment, Pleasurecraft maintains, was inappropriate because Thermo "did not present any evidence tending to establish that the [rejected goods] were, in fact, merchantable." Appellant's Br. at 17, 22. Pleasurecraft claims to have presented the court with evidence that some shipped items were not merchantable. *Id*. at 22 (referring, it seems, to the testimony of Thur-

man, president of Pleasurecraft, and of Franks, an employee). Pleasurecraft asserts that in order to reach its decision, the district court must have "engaged in an impermissible evaluation of their credibility." *Id.*

Pleasurecraft's argument, however, reveals a fundamental misunderstanding of the standard for summary judgment. While the moving party "bears the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986), there is no requirement that "the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim," *id*. Thermo satisfied its initial burden by pointing to the pleadings and depositions, "which it believes demonstrate the absence of a genuine issue of material fact," *id*.

Rather, Pleasurecraft, the party that would bear the burden of proof at trial, must satisfy its burden by making "a showing sufficient to establish the existence of an element essential to [its] case," *id*. at 322; *see also Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). It is precisely this that Pleasurecraft has failed to do.

Federal Rule of Civil Procedure 56(e) states:

> Supporting and opposing affidavits *shall be made on personal knowledge*, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

(Emphasis added). Pleasurecraft relies on the testimony of Thurman and Franks, but Thurman (Pleasurecraft's President) acknowledged that he had *no personal knowledge* of how Pleasurecraft's list of allegedly unmerchantable goods was generated. Instead, Thurman relied on Franks. J.A. 291-92.

The district court found Franks' testimony, J.A. 134, irrelevant to the issue of merchantability, J.A. 356. At best, the district court concluded, Franks' testimony establishes that some assets were not *marketable*. *See*, *e.g.*, J.A. 134 (stating that the list of supposedly unmerchantable goods was generated by identifying "items which had zero movement").

Ohio law distinguishes between merchantability and marketability. The former refers to goods of average quality that are "fit for the ordinary purposes for which such goods are used." Ohio Rev. Code Ann. § 1302.27(B) (West 2001). Nothing in the definition implies that such goods must be marketable, *i.e.*, that there exist willing buyers.

Indeed, at summary judgment, *Pleasurecraft flatly admitted that nothing in Ohio law supports its position*. J.A. 345 ("Ohio law does not make it unmerchantable, Judge."). Skirting the issue, Pleasurecraft was reduced to the "argument" that while the goods may not be unmerchantable under Ohio law, "[u]nder normal business practices you don't keep obsolete inventory," J.A. 345. Nonetheless, Pleasurecraft attempted to sell (and in some cases actually sold) the goods it now claims are not merchantable. J.A. 356. That is, Pleasurecraft claims to have placed on the market goods that are not "fit for the ordinary purposes for which such goods are used."

Furthermore, under section 3.10 of the agreement as amended, J.A. 53, Pleasurecraft must show that the aggregate amount of its book value claim combined with its unmerchantability claims exceeds $50,000 in order to be entitled to any recovery at all. Because we have rejected Pleasurecraft's book value claim, it must come forward with evidence tending to show at least $50,000 of charges for unmerchantable goods. While the district court suggested that some items "appeared to have been broken," it also found that the total value of those items did not reach $50,000. J.A. 356. Pleasurecraft points to nothing in the record that inclines us to disturb that finding.

Because Thermo warranted only merchantability, J.A. 38, and not marketability, Pleasurecraft has put forward no relevant evidence. We therefore affirm the district court's grant of summary judgment to Thermo on this claim.

Finally, and by way of housekeeping, we address Pleasurecraft's less-than-precise claim that some of the parts it rejected were somehow outside the scope of the agreement. Its complaint, however, includes no such allegation, J.A. 16, and it appears that the district court did not rule on this (though it indicated that it would have granted summary judgment to Thermo on this claim as well, J.A. 356-

57). Suffice it to say that at the summary judgment hearing, Pleasurecraft could not identify *any* specific items outside the scope of the agreement but instead stated that "we didn't come to prove the summary judgment." J.A. 329. On the assumption that the district court ruled on it, it did not err in granting summary judgment to Thermo on this claim.

## *CONCLUSION*

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*