NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0254n.06

Nos. 15-3604, 16-4194, 18-3305

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 15, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| SCOTT HUTCHISON, | ) | |
| | ) | |
| Plaintiff-Appellee/Cross-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| JOHN R. PARENT, | ) | OHIO |
| | ) | |
| Defendant-Appellant/Cross-Appellee. | ) | |
| | ) | |
| | ) | |

Before: MERRITT and LARSEN, Circuit Judges.[*]

LARSEN, Circuit Judge. This appeal stems from the breakup of a business relationship between Scott Hutchison and John Parent. Hutchison initially sued Parent in state court for breach of fiduciary duty and fraud involving the operation of their company. Parent counterclaimed based on Hutchison's misappropriation of company funds and failure to repay loans. After three years litigating in state court and with trial imminent, Hutchison dismissed his claims and refiled them in federal court. After Parent obtained a consent judgment against Hutchison on his state court counterclaims, he moved for summary judgment in the federal court litigation, arguing that Hutchison's claims were barred by Ohio Civil Rule 13(A), which requires that claims arising out of the same transaction or occurrence be litigated in a single lawsuit. The district court denied

---

[*] The third member of this panel, Judge Damon J. Keith, died on April 28, 2019. This order is entered by the quorum of the panel. 28 U.S.C. § 46(d).

Parent's motion, and a jury eventually found Parent liable for breach of fiduciary duty and fraud, awarding Hutchison compensatory and punitive damages.

After extensive postjudgment proceedings, Parent now appeals the denial of his summary judgment motion, as well as various other issues arising from the trial and postjudgment proceedings. Hutchison cross appeals on numerous grounds. Despite the myriad questions, we need address only the first. We find that Ohio Rule 13(A) barred Hutchison's claims in the first place. We, therefore, VACATE the judgment and damages awards, REVERSE the district court's denial of Parent's summary judgment motion, and REMAND with instructions to render judgment for Parent on that basis.

I.

In 2004, Scott Hutchison and John R. Parent jointly formed JPSH, LLC, an Indiana limited liability company. They created JPSH for the purpose of purchasing and reselling apartment complexes. Under the company's Operating Agreement, Parent had a 51% membership interest, and Hutchison had a 49% interest, with Parent providing capital and Hutchison providing sweat equity. Separate from his business with Hutchison, Parent was also a 51% shareholder of J-J Parent Corp. Hutchison also operated a separate business, Scott Hutchison Properties, a corporation of which he was the sole shareholder.

JPSH bid on properties at auctions held by the Department of Housing and Urban Development and eventually acquired the two properties at issue in this case: an apartment building in Kentucky and an apartment complex in Louisiana. From 2004 to 2006, Parent advanced funds to JPSH to renovate the properties. Hutchison claims that Parent systematically changed these advances from capital contributions to loans.

In July 2008, Parent and Hutchison, on behalf of JPSH, executed notes and mortgages on the Kentucky and Louisiana properties totaling almost $3 million in favor of J-J Parent Corp. Parent never made any payments on the notes and never told Hutchison he was not making these payments. J-J Parent Corp. then foreclosed on both properties. J-J Parent Corp. later purchased the Louisiana property at a sheriff's sale for $897.13 and bought the Kentucky property at auction for $533,400.

In September 2009, Hutchison (both individually and on behalf of JPSH) sued Parent and J-J Parent Corp. in Ohio state court, alleging willful failure to pay on the loans. *See* Complaint, *Scott Hutchison, et al. v. John Parent, et al.*, No. CI-2009-6662 (Ohio Ct. Common Pleas Sept. 7, 2009) (*JPSH I*). Parent raised three counterclaims in *JPSH I*: first, he claimed that Hutchison had breached his obligation to pay on a $100,000 promissory note from February 2007; second, he claimed that Hutchison had breached an oral agreement to repay $27,000 that Parent had advanced him in late July 2006; and third, he claimed that Hutchison misappropriated more than $55,000 from JPSH, by impermissibly borrowing money from the entity. In November 2010, Hutchison filed a second amended complaint alleging, *inter alia*, breach of fiduciary duty and fraud. But in February 2012, Hutchison filed a notice voluntarily dismissing his amended complaint. Two months later, the parties entered into a consent judgment on Parent's counterclaims against Hutchison, awarding Parent $153,000.

The day after voluntarily dismissing his state law claims, Hutchison filed a complaint in federal district court (*JPSH II*), asserting the same claims. Parent filed a motion for summary judgment, arguing that Ohio Civil Rule 13(A) barred Hutchison from relitigating the claims he voluntarily dismissed in state court because they were compulsory counterclaims to Parent's own counterclaims. The district court denied Parent's motion, concluding that Rule 13(A) did not bar

Hutchison's claims. *See Hutchison v. Parent*, No. 3:12-CV-320, 2014 WL 1333180, at *5 (N.D. Ohio Mar. 31, 2014).

Hutchison's claims proceeded to trial, and a jury found Parent liable for breach of fiduciary duty and fraud and awarded $989,000 in compensatory damages and $1,135,000 in punitive damages. The district court entered judgment on April 28, 2015, and thereafter the parties conducted extensive post-trial proceedings, which generated most of the other issues presented by the parties on appeal. Hutchison and Parent both timely appealed.

## II.

Parent argues that Ohio Civil Rule 13(A) precludes Hutchison's attempt to litigate his claims in federal court following the consent judgment against him in state court and that the district court erred by not granting summary judgment on this basis. We review the district court's denial of summary judgment de novo. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). Ohio law governs whether an Ohio judgment precludes a later federal case. *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

Ohio Civil Rule 13(A) governs compulsory counterclaims, requiring that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." This rule "requires all existing claims between opposing parties that arise out of the same transaction or occurrence to be litigated in a single lawsuit, regardless of which party initiates the lawsuit." *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 102 (Ohio 1994). If related claims are not litigated in a single lawsuit, res judicata prohibits litigating them later. *Geauga Truck & Implement Co. v. Juskiewicz*, 457 N.E.2d 827, 828 (Ohio 1984).

Ohio courts apply a two-prong test to determine whether Rule 13(A) bars a claim: (1) did the claim exist when the pleading was served in the prior case and (2) does the claim arise out of the transaction or occurrence that is the subject matter of the opposing claim? *Id.* at 829. Since Hutchison actually asserted his breach of fiduciary duty and fraud claims in *JPSH I*, there is no question that they existed when Parent asserted his counterclaims in the prior case as required by the first prong of the Rule 13(A) analysis. *Id.* Under Rule 13(A), "[i]t makes no difference . . . that the opposing claim in the earlier action was a counterclaim rather than a complaint or that the present claim was originally filed as a complaint in the earlier action and dismissed without prejudice after the defendant filed its counterclaim." *Rettig*, 626 N.E.2d at 102.

The only question, therefore, is whether Parent has satisfied the second prong. To determine whether claims arise out of the same transaction or occurrence, Ohio courts ask whether the claims are "logically related"—that is, whether "separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Id.* at 103. Put another way, "multiple claims are compulsory counterclaims where they 'involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.'" *Id.* (quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961)).

Applying Ohio's logical-relationship test here, we find that Hutchison's *JPSH II* claims for breach of fiduciary duty and fraud are logically related to Parent's *JPSH I* counterclaims, and, thus, should have been litigated in the state case. Res judicata, therefore, barred Hutchison's claims, and the district court erred by not granting summary judgment in Parent's favor at the outset of the litigation.

The district court's error stemmed largely from its reliance on the wrong legal standard. In determining whether the relevant claims were part of the same transaction or occurrence under Rule 13(A), the district court never even mentioned the logical-relationship test. *See Hutchison*, 2014 WL 1333180, at *5. Instead, the district court focused on whether the claims were capable of "independent adjudication" under Ohio Civil Rule 41(A)(1)(a). *Id.* But whether claims are capable of independent adjudication under Rule 41(A)(1)(a) is a distinct—and much more demanding—inquiry than whether claims are logically related for purposes of Rule 13(A).

Rule 41(A)(1)(a) allows a plaintiff to dismiss her action once without prejudice and without a court order before trial *unless* the case involves a counterclaim which cannot be independently adjudicated. *See, e.g.*, *Holly v. Osleisek*, 531 N.E.2d 766, 768 (Ohio Ct. App. 1988). Claims are only incapable of independent adjudication, under Rule 41(A)(1)(a), "where the plaintiff's claims actually provide the basis for the [defendant's] counterclaim" and so it is truly impossible to bring the counterclaim in a separate action. *Howard v. SunStar Acceptance Corp.*, No. 00AP-70, 2001 WL 481936, at *4 (Ohio Ct. App. May 8, 2001). But whether it is possible for claims to be tried separately—allowing dismissal under Rule 41(A)(1)(a)—has nothing to do with whether res judicata would bar the plaintiff's claims from being relitigated in a later case. *See Sec. Natl. Bank & Tr. Co. v. Reynolds*, No. 2007 CA 66, 2008 WL 3586906, at *5 (Ohio Ct. App. Aug. 15, 2008) ("Civ. R. 41 does not negate the requirements of Civ. R. 13(A)."); *Howard*, 2001 WL 481936, at *5 (stating that Rule 41(A)(1)(a)'s independent adjudication standard would not prevent voluntary dismissal even where the claims "unquestionably arose out of the same circumstances and will require the presentation of many of the same facts"). Indeed, in *Howard*, the Ohio Court of Appeals noted that, despite its finding that the claims in that case could be independently

adjudicated, "compulsory counterclaim and collateral estoppel issues" might arise "if appellants commence a new action reasserting these claims." 2001 WL 481936, at *5.

In short, the test for whether claims are logically related under Rule 13(A) is not the same as the test for whether a plaintiff may voluntarily dismiss their claims under Rule 41(A)(1)(a). The district court, therefore, erred when it rejected Parent's preclusion argument on the basis that his counterclaims "could stand on [their] own" apart from Hutchison's claims and were "capable of independent adjudication." *Hutchison*, 2014 WL 1333180, at *5.

We turn now to the proper test—whether there is a *logical relationship* between the claims. In *Rettig*, the Ohio Supreme Court found a logical relationship between claims that involved several distinct factual and legal issues but were nevertheless "offshoots of the same basic controversy between the parties over an accounting of the various rights, obligations and liabilities springing from the business arrangement." 626 N.E.2d at 103. The court explained that a transaction or occurrence under Rule 13(A) "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* And the court explained that the goal of the logical relationship test was "to avoid a multiplicity of actions and to achieve a just resolution by requiring in one lawsuit the litigation of all claims arising from common matters." *Id.*

Following *Rettig*, Ohio courts have consistently found Rule 13(A) preclusion where parties' later-brought claims are offshoots of the same basic controversy involving a business relationship. *See Grill v. Artistic Renovations*, 106 N.E.3d 934, 941 (Ohio Ct. App. 2018) (finding homeowners' contractual and tort claims against general contractor logically related to contractor's prior quantum meruit action because all were based on "the construction/remodeling contract"); *Ferrara v. Vicchiarelli Funeral Servs., Inc.*, 69 N.E.3d 171, 175 (Ohio Ct. App. 2016) (finding

family members' claims against funeral home for abuse of a corpse, negligence, breach of contract, and negligent misrepresentation logically related to prior claim by funeral home for unpaid portion of funeral services contract because "[b]oth lawsuits concerned the mishandling of the final arrangements of the [deceased]"); *Sherman v. Pearson*, 673 N.E.2d 643, 646–47 (Ohio Ct. App. 1996) (holding that a tenant's personal injury action against her former landlord for a fall on a negligently maintained stairway was logically related to the landlord's prior forcible entry and detainer action for unpaid rent).

Informed by this caselaw, we conclude that Parent has shown a logical relationship between his *JPSH I* counterclaims for unpaid loans and misappropriation of funds and Hutchison's *JPSH II* claims for breach of fiduciary duty and fraud. These claims are plainly "offshoots of the same basic controversy between the parties over an accounting of the various rights, obligations and liabilities springing from the business arrangement"—here, the funding and management of JPSH. *See Rettig*, 626 N.E.2d at 103. Parent's counterclaims and Hutchison's claims involved overlapping factual issues (regarding when and to what extent Parent loaned money to JPSH or Hutchison for the purpose of funding JPSH) as well as legal issues (regarding the members' authority or duties under the JPSH Operating Agreement). *Cf. id.* (explaining that claims are logically related if "separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts").

There is no question that voluntarily dismissing the *JPSH I* claims from state court and refiling them in federal court involved the "substantial duplication of effort and time" that Rule 13(A) seeks to prevent. Hutchison alleged in his *JPSH II* complaint that Parent, from 2006 to 2008, had "systematically changed" his method of funding JPSH from capital contributions to loans. And the loans underlying Parent's *JPSH I* counterclaims were discussed repeatedly at trial

in *JPSH II*.  The promissory note for Parent's $100,000 loan was, in fact, one of *Hutchison's* trial exhibits in *JPSH II*.

Even more troubling is that Hutchison's alleged misappropriation from JPSH—one of Parent's *JPSH I* counterclaims—was squarely at issue in *JPSH II*.  Given Hutchison's claim for punitive damages and his general allegations regarding Parent's malicious intent, whether Hutchison was himself misappropriating money from JPSH (and funneling it to his separate company, Scott Hutchison Properties) was a key consideration.[1]  Parent's answer in *JPSH II* expressly raised Hutchison's own "misappropriations[] and failures" as a defense to the second lawsuit.  And during the federal trial—in apparent[2] contradiction of the state court's consent judgment for Parent—Hutchison testified that he had *not* misappropriated any funds from JPSH, explaining away the consent judgment as something he "had to sign . . . to get [the lawsuit] from state court to federal court."  It should be obvious that having to relitigate the first court's judgment in a second case is persuasive evidence by itself that the two sets of claims are logically related.  This retreading of the *JPSH I* litigation is precisely what Rule 13(A)'s enforcement of res judicata principles seeks to prevent.  *See Packer, Thomas & Co. v. Eyster*, 709 N.E.2d 922, 928 (Ohio Ct. App. 1998) (explaining that under the doctrine of res judicata, a prior consent judgment bars relitigation of "that which was determined and . . . those questions that might properly have been litigated" in the prior action).

---

[1] Even the district court recognized that it was Parent's concerns about Hutchison's financial dealings and liabilities that led him to execute the mortgages on the Louisiana and Kentucky properties. *See Hutchison*, 2014 WL 1333180, at *1.

[2] Hutchison's counsel objected to the mention of the consent judgment during the *JPSH II* trial, claiming that the consent judgment did not actually establish misappropriation.  The district court overruled the objection.  Regardless, the dispute over the significance of the *JPSH I* consent judgment at trial in *JPSH II* confirms our conviction that these claims ought to have been litigated in a single action.

For his part, Hutchison parrots the district court's analysis, mistakenly relying on Rule 41(A), but does not point to any caselaw or any record evidence to dispute Parent's logical-relationship argument. Hutchison instead focuses on asserting that Parent forfeited his preclusion argument by failing to object to Hutchison's Rule 41(A)(1)(a) dismissal in state court. Hutchison contends that "[i]t is a basic principle of Ohio law that the failure to promptly object and call any error to the attention of the trial court, at a time when it could have been prevented or corrected, amounts to a waiver of such error." But there was no *error* when Hutchison voluntarily dismissed his *JPSH I* claims. The voluntary dismissal was not itself a violation of Rule 13(A) or Rule 41(A)(1)(a). The putative violation of Rule 13(A) occurred only later when, after the consent judgment, Hutchison continued litigating his logically-related claims in federal court.

Hutchison relies heavily on a footnote in *Rettig*, which noted that the court was not there deciding "whether a defendant is estopped from asserting Civ. R. 13(A) as a bar to plaintiff's claim where, in the earlier action, the defendant had consented to a dismissal without prejudice and the refiling of the claim." *Rettig*, 626 N.E.2d at 102 n.1 (citing *Beta II, Inc. v. Fed. Ins. Co.*, No. C-830779, 1984 WL 6951, at *3 (Ohio Ct. App. Aug. 15, 1984) (explaining that a party who agrees that a claim should be voluntarily dismissed without prejudice could be estopped from asserting Rule 13(A)'s preclusion of that claim)). Hutchison's reliance on this statement is misplaced, however. We have no reason to believe that Parent "consented to a dismissal without prejudice and the refiling" of Hutchison's claims in federal court. *Id.* And Hutchison cites no Ohio authority, nor could we find any, suggesting that a litigant must warn the opposing party against imprudent litigating decisions. Accordingly, we reject Hutchison's forfeiture argument.

* * *

Ohio Civil Rule 13(A) requires that logically-related claims "be litigated in a single lawsuit, regardless of which party initiates the lawsuit." *Rettig*, 626 N.E.2d at 102. Relying on an erroneous standard, the district court overlooked the logical relationship between Parent's *JPSH I* counterclaims and Hutchison's *JPSH II* claims. But as explained above, the overlapping factual and legal issues establish such a logical relationship; therefore, res judicata precluded Hutchison from litigating his dismissed state court claims in the subsequent federal case. Because we resolve the appeal on these grounds, we need not reach any of the other issues presented by the parties.

For these reasons, we VACATE the judgment and damages awards, REVERSE the district court's denial of Parent's motion for summary judgment, and REMAND with instructions to render judgment for Parent on that basis.