[Cite as *Coniglio v. Chesapeake Exploration, L.L.C.*, 2016-Ohio-88.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT


| | | |
|---|---|---|
| CYNTHIA KOONCE, et al. | ) | CASE NO. 13 CO 5 |
| | ) | |
| PLAINTIFFS-APPELLANTS | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CHESAPEAKE EXPLORATION, L.L.C., | ) | |
| et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |


STATE OF OHIO, CARROLL COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT


| | | |
|---|---|---|
| JOSEPH CONIGLIO, et al. | ) | CASE NO. 13 CA 886 |
| | ) | |
| PLAINTIFFS-APPELLANTS CROSS-APPELLEES | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CHESAPEAKE EXPLORATION, L.L.C., | ) | |
| et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES CROSS-APPELLANTS | ) | |
| | ) | |

[Cite as *Coniglio v. Chesapeake Exploration, L.L.C.*, 2016-Ohio-88.]

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeals from the Court of Common Pleas of Columbiana and Carroll Counties, Ohio Case Nos.: 12 CV 136 (Columbiana County); 12CV27102 (Carroll County) |
| JUDGMENT: | Affirmed in part. Modified. |

APPEARANCES:

| | |
|---|---|
| For Plaintiffs-Appellants: | Atty. Lee E. Plakas Atty. Gary A. Corroto Atty. Joshua E. O'Farrell Tzangas Plakas Mannos I Ltd 220 Market Avenue South, 8th Floor Canton, Ohio 44702 |
| For Defendants-Appellees: | Atty. Daniel T. Donovan Gregory L. Skidmore (pro hac vice) Kirkland & Ellis LLP 655 Fifteenth Street, N.W., Suite 1200 Washington, D.C. 20005 |
| | Atty. Clay Keller Babst, Calland, Clements & Zomnir, P.C. One Cascade Plaza Suite 1010 Akron, Ohio 44308 |

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: January 8, 2016

WAITE, J.

{¶1}  In this action involving an oil and gas lease, Appellants Joseph Coniglio and Cynthia Koonce, et al., (collectively referred to as "Appellants") represent more than one hundred landowners.  These landowners filed suit against Appellees Chesapeake Exploration, L.L.C. and CHK Utica, L.L.C. (collectively referred to as "Appellees") in both Columbiana County Common Pleas Court and Carroll County Common Pleas Court.  The matter was consolidated at the trial court level and a visiting judge assigned to hear the consolidated case.  All parties sought summary judgment as to the meaning of a preferential right to renew provision found in each of the respective leases.  Summary judgment was granted in favor of Appellees.  On appeal, Appellants contest the trial court's decision to accept Appellees' interpretation of the provision.  All parties additionally request that we clarify that the lease has only two terms and that all provisions of the lease apply equally to both the primary term and any extended term of the lease.

{¶2}  Because we agree with the Court in *Stewart v. Chesapeake Explorations, L.L.C.*, 6th Cir. Nos. 12-4457, 13-3012, 12-4466, 12-4517, 542 Fed.Appx. 468 (Oct. 30, 2013), we find no error in the trial court's decision to apply Appellees' interpretation to the preferential right to renew provision.  However, the trial court's determination that, if the lease is extended, the lease contains three distinct terms and that the preferential right to renew does not apply to any extended term is erroneous.  Accordingly, the trial court's decision to grant summary judgment in favor of Appellees is affirmed, but judgment is modified to correct the error

regarding the applicability of the preferential right to renew clause to an extended term.

<u>Factual and Procedural History</u>

**{¶3}** On March 30, 2012, thirty-three plaintiffs filed a complaint against Appellees in *Koonce v. Chesapeake Exploration*, Columbiana County Common Pleas Court Case No. 2012 CV 136. Sixteen plaintiffs were later added. On March 22, 2012, seventy-five plaintiffs filed a complaint against Appellees in *Coniglio v. Chesapeake*, Carroll County Common Pleas Court Case No. 2012 CVH 27102. Each landowner had previously entered into an oil and gas lease with Anstutz Exploration Corporation. These leases were later assigned to Chesapeake. Although the cases originated from two different counties, the cases were consolidated at the common pleas level and a visiting judge was assigned to hear the consolidated matter.

**{¶4}** Relevant to this appeal, the parties sought declaratory relief regarding the legal meaning and enforceability of a preferential right to renew provision found within all of the leases. This provision allows Appellees the right to match any third-party offers that Appellants submit to them during the primary term of the lease. The crux of the dispute is whether the provision allows Appellants to immediately terminate any current lease and enter into a new lease with a third party if Appellees fail to match a third-party offer, or whether they must wait until the natural end of the current lease before they can enter into a new lease with another entity. Although several additional counts were included in the complaint, the interpretation of the

preferential right to renew clause was the only issue before the court in summary judgment.

{¶5} All parties filed motions for summary judgment based on their respective interpretations of the provisions. Appellants interpreted the provision to allow an immediate termination of an existing lease with the concurrent right to immediately enter into a new, supplanting lease with a third party if Appellees choose not to match a third-party offer. Appellees interpret the clause to mean that Appellants are free to accept third-party offers during the primary term of their respective leases, but cannot enter into a lease period with a third party until their existing lease comes to its natural end.

{¶6} The trial court determined that the provision does not allow Appellants to terminate the lease before its specified end date, even if Appellees fail to match a third-party offer. In dicta, however, the court also determined that while the preferential right applied to the primary term, it ceased to apply if Appellees exercised their unilateral option to extend the primary term. This timely appeal followed. Since this appeal was filed, four Appellants have settled with Appellees and have withdrawn from the case. One-hundred twenty Appellants remain in this appeal.

<u>Final Appealable Order</u>

{¶7} While the Koonce and Coniglio complaints do contain slight differences, they are virtually identical in substance. Count one asks the court to declare the legal rights of the parties by interpretation of the preferential right to renew provision. The remaining counts of the complaints are as follows: anticipatory breach of contract,

unjust enrichment, injunctive relief, trespass, slander of title, fraudulent misrepresentation, fraud by inducement, negligence per se, negligence, civil conspiracy, and petition for writ of mandamus.

{¶8} Pursuant to R.C. 2505.02(B)(2), an order is final and appealable when it "affects a substantial right made in a special proceeding or upon a summary application in an action after judgment." R.C. 2502.02(A)(2) defines a special proceeding as "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." Importantly, the Ohio Supreme Court has determined that "[a] declaratory judgment action is a special proceeding pursuant to R.C. 2505.02 and, therefore, an order entered therein which affects a substantial right is a final appealable order." *General Acc. Ins. Co. v. Ins. Co. of North America*, 44 Ohio St.3d 17, 22, 540 N.E.2d 266 (1989).

{¶9} Additionally, the trial court order affects a substantial right of the parties, as it determined whether an existing oil and gas lease can be declared terminated prior to the natural end of the lease term. Hence, the record reflects that the trial court decision is a final, appealable order

{¶10} Appellants have presented five assignments of error. Appellees have presented one cross-assignment of error. As several of the assignments of error address the same issue, they will be discussed together. For ease of understanding, the assignments will be discussed out of order.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ERRED WHEN IT MISCONSTRUED THE LANGUAGE OF PARAGRAPH 14 ERRONEOUSLY STATING THAT PLAINTIFFS' INTERPRETATION WOULD REQUIRE THE PARTIES TO "PREDICT WITHOUT ANY CLEAR BASIS WHEN 'ONGOING OPERATIONS' OR 'ONGOING PRODUCTION' WILL END, IN ORDER TO KNOW WHEN IT IS LESS THAN ONE YEAR AHEAD."

<u>ASSIGNMENT OF ERROR NO. 4</u>

THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THE PHRASE "IMMEDIATELY THEREAFTER" IN PARAGRAPH 14 DID NOT APPLY TO THE EFFECTIVE DATE OF THE REPLACEMENT LEASE.

**{¶11}** Whether paragraph fourteen of the lease allows Appellants to immediately terminate the lease in the event that Appellees fail to match a third-party offer is the crux of this appeal. Paragraph fourteen, which is significantly titled "Preferential Right to Renew," states:

> If, at any time during the primary term hereof, or within one (1) year from the expiration, cancellation or termination of this Lease, Lessor receives an acceptable, bona fide third-party offer to lease the Leasehold, in whole or part, Lessor shall promptly provide the Lessee, in writing, of all of the verifiable particulars of such offer. Lessee shall have thirty (30) days from the receipt thereof to advise Lessor, in writing, of its agreement to match said third-party offer as to all terms

and consideration; immediately thereafter, Lessor and Lessee shall take all cooperative steps necessary to effectuate the consummation of said transaction and the survival of said transaction through any statutorily mandated right of cancellation thereof. Any lease or option to lease the Leasehold, in whole or part, granted by Lessor in contravention of the purposes of this paragraph shall be deemed null and void.

(4/11/09 Lease, ¶14.)

**{¶12}** Appellants contend that paragraph fourteen clearly provides them the right to immediately terminate the lease if a third-party offer is received and Appellees fail to match that offer. Appellants focus their argument on two phrases contained within paragraph fourteen. The first states that third-party offers may be received and submitted to Appellees "at any time during the primary term."

**{¶13}** The second grants Appellees thirty days to "advise" whether they will match the offer and "immediately thereafter, Lessor and Lessee shall take all cooperative steps necessary to effectuate the consummation of said transaction." (4/11/09 Lease, ¶14.) Appellants interpret this language as follows: if Appellees fail to match a third party offer, the existing contract is immediately terminated and Appellees must take all steps necessary to allow Appellants to enter into a new contract with the third party entity.

**{¶14}** Appellees dispute Appellants' interpretation. Appellees contend that this language has no effect on the term of the contract or its extension, but merely

provides them with a "first right of refusal" should they choose to renew the lease beyond its natural period. Should they choose not to take advantage of this preferential right to renew under paragraph fourteen, the lease must still continue throughout the remainder of the agreed upon term. Only after the lease comes to its natural end may Appellants choose to enter into a third-party lease based on the plain language of the provision. In support of their argument, Appellees first note that these are "paid up" leases. Appellees have already paid Appellants the entire consideration for the existing primary term of the contract. If the contract were to end once Appellees failed to match a third-party offer, Appellants would be unjustly enriched by the compensation already paid to them.

{¶15} Appellees also dispute Appellants' interpretation of the phrase "immediately thereafter" and contend that the clear and unambiguous language of the lease states that Appellees' choice not to exercise their preferential right to renew at the expiration of the lease (by failing to match a third-party offer) does not automatically end the current term of the lease. In support of their argument, Appellees turn to paragraphs one, three, and four of the lease. Paragraph one, entitled "Lease Clause," grants to Appellees exclusive rights to all oil and gas in the leasehold and that "such rights shall survive the term of this agreement for so long thereafter as operations are continued." (4/11/09 Lease, ¶1.) Paragraph three is titled "Lease Term" and states in relevant part:

> This Lease shall remain in force for a primary term of five (5) years * * *
>
> and for as long thereafter as prescribed payments are made, or for as

long thereafter as operations are conducted on the Leasehold in search of or production of oil, gas, or their constituents, or for as long as a well capable of production is located on the Leasehold or lands pooled or unitized therewith, or for as long as extended by provision herein. If after the primary term the last producing well on the Leasehold or lands pooled or unitized therewith is plugged and abandoned, the Leasehold will remain under Lease for an additional period of one year from the date of plugging and abandonment, subject to the payment of delay rental.

(4/11/09 Lease, ¶3.)

**{¶16}** Paragraph four provides Appellees an unconditional, unilateral right to extend the lease. This section specifically allows that the extension is "under the same terms and conditions as contained in this Lease." (4/11/09 Lease, ¶4.) Appellees urge that using Appellants' interpretation of paragraph fourteen and allowing termination during the natural life of the contract would negate these other provisions of the contract and cause them to have no meaning. Appellees contend that their interpretation of the paragraph at issue is the only way to give effect to all of the language of the contract.

**{¶17}** "A clear and unambiguous contract can be enforced as a matter of law through summary judgment, and its interpretation is thereafter reviewed de novo." *Mauersberger v. Marietta Coal Co.*, 7th Dist. No. 12 BE 41, 2014-Ohio-21, ¶8, citing *J.G. Wentworth L.L.C. v. Christian*, 7th Dist. No. 07 MA 113, 2008-Ohio-3089, ¶30.

An appellate court reviews the trial court's decision to grant summary judgment *de novo* using the same standards as the trial court set forth in Civ.R. 56(C). *Haney v. Barringer*, 7th Dist. No. 06 MA 141, 2007-Ohio-7214, ¶33, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In order to grant a motion for summary judgment, a trial court must first determine: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶18}** It is apparent from the first sentence of paragraph fourteen that Appellants can receive third-party offers and present those offers to Appellees while the lease is still in its primary term. It is also clear that Appellees have thirty days to inform Appellants of their decision to match the offer. These provisions are not in dispute.

**{¶19}** The contentious language in this paragraph states as follows: "Lessee shall have thirty (30) days from the receipt thereof to advise Lessor, in writing, of its agreement to match said third-party offer as to all terms and consideration; immediately thereafter, Lessor and Lessee shall take all cooperative steps necessary to effectuate the consummation of said transaction * * *." At issue, then, is the

interpretation of the phrases "immediately thereafter" and "take all cooperative steps necessary to effectuate the consummation of said transaction."

**{¶20}** While there appears to be no Ohio case interpreting this language, at least two other courts have addressed identical lease provisions. Two federal cases are directly on point. The first is *Stewart v. Chesapeake Explorations, L.L.C.*, *supra*. In *Stewart*, the Sixth Circuit upheld the district court's decision that a preferential right to renew provision, with language identical to the instant provision, did not provide a means to prematurely terminate the lease if Chesapeake failed to match a third-party offer. *Id.* at 471.

**{¶21}** In *Stewart*, the landowners presented the same arguments advanced by Appellants in the instant appeal. *Id.* at 470. The case involved the identical lessee, Chesapeake Exploration, LLC. Like Appellants, the landowners in *Stewart* interpreted the phrase "immediately thereafter, Lessor and Lessee shall take all cooperative steps necessary to effectuate the consummation of said transaction" to mean that if Chesapeake fails to match a third-party offer, the lease will immediately terminate and Chesapeake must assist and allow the landowners to promptly consummate a new lease with the third-party entity. *Id.*

**{¶22}** The Sixth Circuit disagreed with the landowners' interpretation. The court determined that a third-party contract is not the "transaction" referenced in the preferential right to renew provision. *Id.* The court determined that the word "transaction" referred instead to Chesapeake's agreement to match the third-party offer, not to entering a third-party lease. *Id.* The court also determined that the word

"consummate" means that the existing lessor and Chesapeake may complete a new contract accepting the third party terms as their own by mutual signature, as opposed to the landowners' interpretation, which would allow them to end their relationship with Chesapeake and enter a lease with a new, third-party entity. *Id.* at 470-471. Taken as a whole, the court decided that this language provided that Chesapeake must agree to match the outside offer and promptly sign a new lease with the landowners if Chesapeake wished to maintain their preferential right to renew. *Id.* at 471. If they refuse and the preferential right is waived, at that point the landowners may enter into a lease with a third party, but such lease cannot take effect until the existing contract comes to its natural end, both of the primary term and any extension. *Id.*

**{¶23}** At the outset, we must note that it is not insignificant that this paragraph is titled "Preferential Right to Renew." Giving effect to all of the language in the contract, this paragraph was intended to apply only to a "renewal" of the contract, which can only take effect if a contract is at an end. With this in mind, the question of what effect a third-party offer has on the existing contract becomes more clear. The contract plainly states that Appellees have 30 days to advise Appellants of their "*agreement to match*" the third-party offer. (Emphasis added.) (4/11/09 Lease, ¶14.) Only if Appellants agree to match the offer do the parties "immediately thereafter, * * * take all cooperative steps necessary to effectuate the consummation of said transaction." Thus, it is the agreement to match the offer that should be immediately entered by the parties. This paragraph is entirely silent as to action taken if

Appellees do not agree to match the offer, but such failure on the part of Appellees has no effect whatsoever on the term of the existing lease. This interpretation is further buttressed by the last sentence in paragraph fourteen: "[a]ny lease or option to lease the Leasehold, in whole or part, granted by Lessor in contravention of the purposes of this paragraph shall be deemed null and void." Thus, the plain reading of the preferential right to renew leads to the conclusion that any failure of Appellees to agree to match a bona fide third-party offer does not effect the life of the lease (either in primary term or any unilateral extension). However, once the lease concludes, this failure results in waiver of their preferential renewal right in the lease.

**{¶24}** As Appellants have argued here, the *Stewart* court held that the landowners' interpretation conflicted with three other provisions of the lease. *Id.* First, adopting the landowners' interpretation would conflict with the primary term, which provided the lease "*shall remain in force* for a primary term * * *" of specific number of years, which in *Stewart* was three. (Emphasis sic.) *Id.* If the landowners' interpretation was correct, the lease would not remain in force for that definite period of years negating the provision. *Id.* Second, the landowners' interpretation was in conflict with the provision granting a secondary term. The language allowing lessee an automatic extension of the primary term so long as certain conditions were met (conditions that had no relevancy to paragraph fourteen), is mandatory. Again, the court explained that, under the landowners' interpretation, this provision would be void: the landowners' interpretation served to completely remove Chesapeake's

option to extend the lease. *Id.* Accordingly, the Court affirmed the trial court's judgment in favor of Chesapeake. *Id.*

**{¶25}** The Southern District Court, Eastern Division, also granted summary judgment in favor of an oil and gas company, Triad Hunter, L.L.C. Triad was assigned a similar lease from Chesapeake. The District Court determined that the preferential right to renew provision allowed Triad the opportunity to match a third-party offer, but did not "deprive Triad 'of its *current* rights in the lease.' " (Emphasis sic.) *Egnot v. Triad Hunter L.L.C.*, S.D.Ohio No. 2:12-cv-1008, 2013 WL 5487059, *5, (Sept. 30, 2013). This decision was initially appealed, but the appeal was dismissed.

**{¶26}** While the Sixth District's decision in *Stewart* is not binding, its reasoning is persuasive. Like *Stewart*, the instant leases contain a two-tiered habendum clause. The first tier, the primary term, is described in paragraph three: "[t]his Lease shall remain in force for a primary term of five (5) years from April 11, 2009." (4/11/09 Lease, ¶3.) As the Sixth District determined in *Stewart,* if the lease immediately terminated under Appellants' interpretation of paragraph fourteen, then the primary term, which provides the mutually agreed lease end date, would be negated.

**{¶27}** Paragraph four of the lease provides Appellees with a one time, unilateral right to extend the primary term. If the landowners' argument is accepted, Appellees would also lose their right to extend the primary term of the lease. In fact, this language would amount to surplusage. Again, we note that paragraph fourteen

and its provisions apply only to any renewal of the original contract. There is no penalty for Appellees, beyond waiver of their preferential right to renewal, for failing to agree to match a third-party offer. The contract language discusses only the immediate effect of Chesapeake's "agreement" to match the terms of the third-party offer, and provides no immediate penalty for failure to so agree. While this means Appellants are delayed in entering a more beneficial contract, this delay is only until the end of the natural life of the contract to which both parties mutually agreed. Nothing in this contract allows Appellants to abandon their original agreement the moment they receive a better offer. On the other hand, at the end of the primary and any secondary term of this agreement, Appellees cannot expect to maintain any benefit of their bargain past the life of the agreement. Hence, failure to match any better offer obtained during the life of the contract waives Appellees' preference should they seek to renew a contract at its end.

{¶28} The effect that the landowners' interpretation would have on these lease provisions is amplified by the fact that Appellees have paid Appellants full consideration for these provisions. Appellants' interpretation would likewise allow a third party to take advantage of Appellees' preparations and expense in drilling. Once these operations began, it would be known to outside parties that the property is valuable, at Appellees' expense. It is apparent from these considerations that Appellees could lose considerable investment in the property simply by failing to match an in-term offer from a third party when Appellees have educated others as to its value, and expended sums to prepare to drill.

**{¶29}** In addition, Appellants' interpretation would require us to add words to the lease, as the existing language does not directly or indirectly give Appellants the right to terminate the contract before its natural end date. See *Packer, Thomas & Co. v. Eyster*, 126 Ohio App.3d 109, 114, 709 N.E.2d 922 (7th Dist.1998), citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978) (when language in a contract is clear and unambiguous, an appellate court cannot create a new contract by finding an intent not expressed in the clear language agreed to by the parties.) As earlier stated, paragraph fourteen speaks to the parties' rights and duties where Appellees agree to match another offer. It does not directly address rights and duties of the parties if there is no such agreement.

**{¶30}** Contrary to Appellants' argument, the trial court did not remove their right to contract with a third party. This is evident from the trial court's decision:

> This Court concludes as a matter of law that paragraph 14 of the Amstutz lease gives the plaintiff-landowner-lessors a right to accept a competitor's offer during the primary term and during the first year after all other lease rights end, if Chesapeake fails to match that competitor's offer pursuant to paragraph 14, provided that the replacement lease cannot interfere with Chesapeake's rights to maintain inactive speculation during the primary term, or its rights to maintain "continuing operations" or "production" under paragraphs 12 and 13.

(1/13/14 J.E., p. 1.)

**{¶31}** In other words, the trial court acknowledged Appellants' right to accept third-party offers, but expressly stated that any offers must not interfere with Appellees' existing rights pursuant to contract. Once the existing lease ends, a contract with the third party may begin.

**{¶32}** As the landowners' interpretation of paragraph fourteen conflicts with other lease provisions and is contrary to its plain and unambiguous language, Appellants' third and fourth assignments of error are without merit and are overruled.

## ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT ERRED WHEN IT FAILED TO CONSTRUE ANY RESULTING AMBIGUITY AGAINST DEFENDANTS/APPELLEES, OR ALTERNATIVELY, FIND THAT GENUINE ISSUES OF MATERIAL FACT EXIST PRECLUDING JUDGMENT AS A MATTER OF LAW.

*Summary Judgment*

**{¶33}** Appellants contend that three different interpretations of the contract exist: their interpretation, Appellees' interpretation, and the trial court's interpretation. As a result, Appellants conclude that since more than one reasonable interpretation exists, summary judgment was inappropriate.

**{¶34}** Appellees argue that a contract is ambiguous only when it is susceptible to two or more reasonable interpretations. As Appellants' interpretation is unreasonable, Appellees argue that summary judgment was proper. Further, under Ohio law, Appellees argue that the existence of competing interpretations does not in and of itself render a contract ambiguous. Regardless, and contrary to Appellants'

arguments, the trial court determined that the contract was unambiguous. Appellees explain that the trial court differed in interpretation of this contract with Appellees only in regard to the extended term of the lease. This does not make the language of paragraph fourteen ambiguous.

**{¶35}** When a contract is clear and unambiguous, "its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E. 271 (1984), citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978).

**{¶36}** Despite Appellants' contention that the trial court's interpretation of paragraph fourteen differs from that posited by Appellees, the two interpretations are materially the same. The only difference between the two involves whether the contract creates a third and distinct term in the event that Appellees decide to exercise their right to extend the primary term. This discrepancy has nothing to do with the issue of whether Appellants can prematurely terminate the contract if Appellees do not match a third-party offer. Additionally, in determining that paragraph fourteen does not give Appellants the right to prematurely terminate the contract, the trial court found the language of paragraph fourteen was unambiguous. Consequently, there are only two interpretations of paragraph fourteen: the one held by Appellants and the one advanced by Appellees. As we have determined that this language is unambiguous there is no issue of fact to be determined, and summary judgment was properly granted.

*Mutual Mistake*

**{¶37}** Appellants argue that if the trial court's interpretation of the lease is correct, a mutual mistake exists, as neither party attached that meaning to paragraph fourteen at the time they entered the respective leases. Consequently, Appellants argue that there could not have been a meeting of the minds. As the parties' different interpretation of paragraph fourteen is a material fact, Appellants contend that the contract should be voided due to the mutual mistake.

**{¶38}** In response, Appellees urge that as Appellants failed to present this argument to the trial court, it has been waived. Even so, Appellees state that Appellants' main argument presents an issue of law. Because the doctrine of mutual mistake only applies when there is a mistake of fact, the doctrine is inapplicable to these facts.

**{¶39}** Failure to raise an argument in a motion for summary judgment brief waives all but plain error review. *J&B Fleet Indus. Supply, Inc. v. Miller*, 7th Dist. No. 09 MA 173, 2011-Ohio-3165, ¶76. Appellants admittedly failed to argue their theory of mutual mistake to the trial court, thus are limited to a plain error review.

**{¶40}** In order to find mutual mistake, the agreement in question must "be contrary to the understanding of all of the contracting parties." *Lapp v. Anzells,* 8th Dist. No. 74487, 1999 WL 632906, *3 (Aug 19, 1999), citing *Snedgar v. Midwestern Indemn, Co.,* 44 Ohio App.3d 64, 541 N.E.2d 90 (10th Dist.1988). Despite Appellants' arguments, it is apparent that Appellees' interpretation of the language in contention was understood by them at the time the contract was signed and is

correct. At best, then, this case presents a unilateral mistake on the part of Appellants. Appellants cannot show plain error. Accordingly, Appellants' fifth assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THE LEASES HAVE THREE SEPARATE DISTINCT COMPONENTS BASED ON CONSIDERATION.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THE RIGHT TO OBTAIN A NEW LEASE UNDER PARAGRAPH 14 "DURING THE PRIMARY TERM" DOES NOT APPLY DURING AN EXTENSION OF THE PRIMARY TERM.

CROSS-ASSIGNMENT OF ERROR

THE TRIAL COURT'S HOLDING THAT LESSORS CANNOT USE THE PREFERENTIAL RIGHT TO RENEW PROVISION TO TERMINATE THEIR VALID OIL AND GAS LEASES DURING THE PRIMARY TERM APPLIES EQUALLY TO THE EXTENSION OF THE PRIMARY TERM.

**{¶41}** Appellants and Appellees both contend that the trial court erroneously found three distinct terms were contained within the lease. The parties also agree that the trial court erred in deciding that paragraph fourteen would not apply to an extension of the primary term, if Appellees exercise their sole right to extend.

**{¶42}** The trial court stated in its entry that paragraph fourteen of the lease allows Appellants to receive third-party offers and present such offers to Appellees, who have the option to match any offer. However, the trial court also stated, in dicta, that Appellants' right to receive third-party offers does not apply to an extension of the primary term. The parties seek clarification on appeal that paragraph fourteen applies equally to the primary term and any extension of that term.

**{¶43}** There are three lease provisions relevant to this discussion. The first is the two-tiered habendum clause. As previously discussed, the first tier sets out the primary term and provides that the lease will continue for a specified term of years. The second tier defines a secondary term and allows the lease to continue past the primary term if certain conditions are met. The lease also provides Appellees the unilateral right to one extension of the primary term of the lease. Found in paragraph four, this unilateral right states in relevant part: "Lessee has the option to extend the primary term of this Lease for one additional term of * * * years from the expiration of the primary term of this Lease; said extension to be under the same terms and conditions as contained in this Lease."

**{¶44}** Although a different central issue is involved, we recently reviewed the effect of an extended primary term in *Kenney v. Chesapeake*, 7th Dist. 14 CO 24, 2015-Ohio-1278, ¶2. In *Kenney*, we determined that an option clause, which contained similar language to the instant clause, provided the lessee with the right to extend the lease on the same terms. In other words, the original terms of the lease become the terms of the extension.

**{¶45}** As it is clear that the parties intended the original contractual terms of the primary lease term were to become the terms of the contract extension, if any, *Kenney* controls the instant case and the trial court erred in holding that paragraph fourteen does not apply to any extended term. We also note that if an extension is exercised, only one extended term is created. No third, distinct, term exists in these leases.

**{¶46}** Appellants' first and second assignments of error and Appellees' cross-assignment have merit and are sustained.

## Conclusion

**{¶47}** The parties' dispute stems from their conflicting interpretation of a preferential right to renew clause contained within their respective oil and gas leases. Based on the unambiguous language of this provision and the rationale of *Stewart, supra,* the trial court correctly determined that any failure of Appellees to match a third-party offer does not operate to allow Appellants to prematurely and immediately terminate any current lease and immediately enter into a new lease with a third party. However, the trial court erroneously determined in dicta that the right to renew provision would have no application to an extended term and erred in implying the leases contained more than two terms. Accordingly, the judgment of the trial court affirmed but is modified to clarify that paragraph fourteen of the lease applies to the extension of the primary term of the lease, if any.

Donofrio, P.J., concurs.

DeGenaro, J., concurs.